IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO TAKE DISCOVERY FROM UBS FINANCIAL SERVICES INC. AND UBS SECURITIES LLC IN AID OF A FOREIGN PROCEEDING | Case No.: |

### APPLICATION FOR AN EXPEDITED ORDER PURSUANT TO 28 U.S.C. § 1782 MEMORANDUM OF LAW IN SUPPORT

Leon Wagner (the "Applicant"), by and through his undersigned counsel, brings this Application ("Application") on notice for the entry of an order permitting Applicant to issue subpoenas to obtain documents and information from Respondents, UBS Financial Services Inc. ("UBS Financial") and UBS Securities LLC ("UBS Securities", and together with UBS Financial, "UBS" or "Respondents") for use in a foreign proceeding pursuant to 28 U.S.C. § 1782. In support of this Application, Applicant has included his own declaration and the declaration of his attorneys Shai Avnieli ("Avnieli") and Carl Regelmann ("Regelmann"), exhibits to the Avnieli and Regelmann Declarations, and a proposed order granting this Application. Applicant respectfully asks the Court to *expeditiously* grant this Application in its entirety due to a pre-trial hearing in Israel taking place in early 2025.

### PRELIMINARY STATEMENT

Applicant comes before this Court to obtain necessary documents and information from Respondents for use in the foreign proceeding ("Foreign Proceeding") in Tel Aviv, Israel, *Leon Wagner v. Augwind Energy Tech Storage Ltd., et. al*, Civil Action (Tel-Aviv) 57188-02-236. On four separate occasions in 2021 and 2022, Applicant purchased a total of 333,601 shares ("Shares") of Augwind Energy Tech Storage Ltd. ("Augwind") from Or Yogev ("Yogev") for approximately $5,000,000 (the "Transactions"). Applicant purchased the Shares through his bank, UBS. During

1

the second half of 2022, following the revelation that Augwind's flagship product – AirBattery – was significantly less efficient than previously presented, Augwind's share value plummeted until it ultimately lost more than 90% of its value later that year. Applicant commenced the Foreign Proceeding litigation against, among other parties, Augwind and Yogev. In the Foreign Proceeding, Applicant is seeking recission of the Transactions or monetary damages and asserted claims of fraud and negligent misrepresentation among others. (*See* **Exhibit 1** to the Declaration of Shai Avnieli ("Avnieli Declaration").)[1]

Applicant comes before this court to obtain proof establishing the identity of the seller of the Shares to Applicant necessary to prove his case in the Foreign Proceeding. Applicant has been unable to obtain the documents and information necessary to prove the identity of the seller of Shares for the Foreign Proceeding. Applicant's counsel previously requested the necessary documents and information directly from Respondents, but Respondents only provided Applicant with minimal trade confirmation statements and information that do not identify the seller of the Shares.

The documents and information concerning the identity of the seller of the Shares is squarely within Respondents' control since Respondents executed the Transactions on behalf of Applicant to purchase the Shares. Respondents are required to retain documents and information associated with such sales of publicly traded Shares and is routinely kept by financial institutions such as Respondents.

Accordingly, Applicant seeks an order from this Court to conduct discovery from Respondents concerning the Transactions, the identity of the seller of the Shares, and any financial

---

[1] References to "Exhibit" numbers are to the exhibits attached to the respective Declaration submitted in support of this Application.

entities or agents that acted on the seller's behalf in the Transactions for use in the Foreign Proceeding pursuant to 28 U.S.C. § 1782.

## STATEMENT OF FACTS

**A. Applicant Commenced the Foreign Proceeding in Tel Aviv, Israel**

The Applicant is a United States citizen and resident who resides alternatively between New York, Miami and Puerto Rico. (Wagner Declaration ¶ 1.) In his Statement of Claim filed in the Foreign Proceeding ("Statement of Claim"), (Avnieli Declaration, **Exhibit 1**), Applicant alleges the following: Augwind's main activity is in the development of technology for energetic efficiency and energy storage using compressed air in industrial manufacturing processes. (*Id*. at ¶ 2.) Augwind's flagship development is the AirBattery system designed for the storage of renewable energy. (*Id.*) Yogev is the founder and Chief Technology Officer of Augwind. (*Id.* at ¶ 3.) Yogev sold a considerable portion of his Shares in Augwind to the Applicant, in multiple installments, for a total value of approximately $5,000,000. (*Id.*)

Applicant purchased the Shares based on fraudulent misrepresentations pertaining to Augwind and the efficiency of its AirBattery product in order to pressure Applicant into purchasing the Shares at the price at which he purchased them. (*Id.* at ¶ 9.) Yogev and other defendants in the Foreign Proceeding presented the AirBattery as attaining an efficiency rate exceeding 81% which is very high for the industry. (*Id.* at ¶ 10.) Prior to the Transactions, however, Augwind and Yogev knew full well and concealed from the Applicant that the AirBattery's real efficiency rate is around only 30%. (*Id.* at ¶¶ 12, 60.)

After the Transactions, the truth regarding the AirBattery's genuine level of efficiency was revealed to the public and the value of the Shares plummeted losing more than 90% of their value. (*Id.* at ¶ 61.) In the Foreign Proceeding, Applicant seeks recission of the Transactions or monetary

damages arising out of the fraud, the negligent misrepresentations, and breach of a statutory duty. (*Id.* at ¶¶ 67-87.)

### B. Respondents Refuse to Provide Requested Documents and Information

Applicant's counsel in the Foreign Proceeding – Avnieli – contacted the Israel based UBS Israel Ltd. on March 11, 2024 requesting documentation regarding the executions of the Transactions. (*See* Avnieli Declaration ¶ 8; **Exhibit 2**.) In response, UBS Israel Ltd. advised Avnieli that he would need to contact a UBS affiliate in the United States because Applicant is a client of UBS in New York and not in Israel. (*Id.* ¶ 9). On April 4, 2024, Avnieli wrote to UBS Group AG in the United States to obtain documents and details related to the Transactions at issue in the Foreign Proceeding. (*See id*. ¶ 10; **Exhibit 3**.) Specifically, Applicant requested details revealing the counterparty to the Transactions (i.e., the identity of the individual from whom the Applicant purchased the Shares). Following another inquiry made by Avnieli, UBS Financial sent Applicant's counsel a written response on May 20, 2024 ("May 20th Response"), along with certain trade confirmation documents related to the Transactions ("Trade Confirmations"). (*See id.* ¶ 12; **Exhibit 4**.) The May 20th Response was on letterhead from "UBS Financial Services, Inc." which is a subsidiary of UBS Group AG. (*See id.* **Exhibit 4** at "17.") However, the May 20th Response did not include information regarding the counterparty to the Transactions as required. The "Additional terms and definitions" in the Trade Confirmations states: "Agency Trades: For trades in which we acted as agent, the name of the person the security was purchased from or sold to and the source and amount of any other remuneration received by us, in addition to the amount shown on confirmations, *is available upon written request*." (Emphasis added). On May 22, 2024, Applicant's counsel submitted another written request to UBS's counsel ("May 22nd Request") requesting documents and information concerning the Transactions' counterparty pursuant to the additional terms and definitions in the Trade Confirmations. (*See id.* ¶ 14; **Exhibit 5**.)

4

UBS's legal counsel did not respond to the May 22 Request despite three additional email reminders. (*See id.* ¶ 15; **Exhibit 6**.) Avnieli also wrote to the FDIC's Office of the Ombudsman on July 3, 2024, but the FDIC declined to intervene on behalf of the Applicant. (*See id.* ¶ 16). On October 24, 2024, Applicant's attorney in this matter, Regelmann, emailed UBS's legal counsel – and sent follow up emails on October 30 and November 5 – seeking to discuss the May 20th Response. (*See* Declaration of Carl F. Regelmann ("Regelmann Declaration") ¶ 5; **Exhibit 1**.)

On November 8, 2024, Regelmann received a written response from a Market Supervisory Officer with UBS – Alexander Wolff ("Wolff") – who explained that UBS has "yet to determine the identity of the counterparty on the trades," but that UBS was able to identify two brokers for the counterparties in connection with the Transactions: StoneX Securities Inc. ("StoneX") and Meitav Dash Brokerage Ltd. ("Meitav Dash"). (*See* Regelmann Declaration ¶ 7 ; **Exhibit 2**.) This response, however, did not include any documentation establishing the identity of the brokers. (*See* Regelmann Declaration **Exhibit 2**.)

On November 13, 2024, Applicant's attorney spoke with Wolff and UBS legal counsel (Dan Rosenbaum ("Rosenbaum") who indicated that UBS Securities assisted UBS Financial and executed the Trades due to the shares at issue being thinly traded on the Tel-Aviv Stock Exchange. (*See* Regelmann Declaration ¶ 8.) Wolf and Rosenbaum stated that they were trying to locate the documentation Applicant requested and asked that Regelmann send a description of the documentation sought based on the conversation. (*See* Regelmann Declaration ¶ 8.) Regelmann sent an email on November 13, 2024 to Wolff and Rosenbaum with a description of some of the documents sought by the Applicant. (*See* Regelmann Declaration ¶ 9; **Exhibit 3**.)

On November 15, 2024, Wolf provided screenshots purportedly concerning three of the Trades to StoneX. (*See* Regelmann Declaration ¶ 10; **Exhibit 4**.) On November 15, 2024, Regelmann requested that Wolff and Rosenbaum schedule another call to discuss the screenshots

5

and the inadequacy of the production, but UBS did not respond. (*See* Regelmann Declaration ¶ 11; **Exhibit 3**.) On November 18, 2024, Regelmann sent another email requesting a call with UBS and UBS did not respond. (*See* Regelmann Declaration ¶ 12; **Exhibit 3**.)

UBS's lack of adequate responses is causing substantial harm to Applicant because the Applicant needs the requested documents and information to establish that Yogev was the seller of the Shares in the Foreign Proceeding. Applicant expects Respondents to possess information and documents that would reveal the actual identity of the seller of Shares. These documents and information are routinely kept by financial institutions as they are required to do so. It is troubling that a financial institution as large as UBS claims not to have routine transactional documents establishing the details surrounding the sale of nearly $5 million of publicly traded Shares. As a result, Applicant submits this Application seeking expedited discovery from UBS pursuant to 28 U.S.C. § 1782. A copy of the Applicant's proposed request and subpoenas to UBS are attached as **Exhibits 5 and 6** to the Regelmann Declaration.

This Application is *urgent* because a pre-trial hearing in the Foreign Proceeding is currently scheduled for the beginning of 2025 and the Applicant needs to present an affidavit in advance of the hearing which lists the relevant discovery in its possession. (Avnieli Declaration ¶ 18.)

### ARGUMENT

I. **THIS APPLICATION SATISFIES SECTION 1782'S REQUIREMENTS**

28 U.S.C. § 1782(a) provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal…The order may be made…upon the application of any interested person….

The purpose of Section 1782 is to provide a procedure whereby qualified applicants may obtain "federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v.*

6

*Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). "Any interested person" includes litigants before foreign or international tribunals. *Id.* at 257.

The objective behind Section 1782 is to "assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws." *Id.* at 262. A district court has the power to grant a Section 1782 application where: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Mees v. Buiter,* 793 F.3d 291, 297 (2d Cir. 2015) (citation omitted). The Applicant meets each of these requirements.

### a. UBS Financial and UBS Securities are Located in this District

UBS Financial is a foreign corporation authorized to conduct business in the city and State of New York. UBS Financial maintains an office located at 1285 Avenue of the Americas New York, New York, 10019.

UBS Securities is a foreign limited liability corporation authorized to conduct business in the city and State of New York. UBS Securities maintains an office located at 1285 Avenue of the Americas New York, New York, 10019.

Accordingly, Respondents are within the jurisdiction of this Court and are subject to this Court's authority concerning the requested discovery sought in this Application.

### b. The Requested Discovery is for Use in Litigation Before a Foreign Tribunal

Applicant seeks documents and information from UBS concerning the execution of the Transactions including the identity of the counterparty to the Transactions at issue in the Foreign Proceeding and the financial institutions that executed the Transactions on the seller's behalf. The Applicant requires proof that he purchased the Shares from Yogev – as alleged in the Foreign

Proceeding Statement of Claim – because those sales from Yogev are the sole Transactions for which the Applicant is seeking recission and monetary damages. (*See* Avnieli Declaration **Exhibit 1**.) Accordingly, these documents and information surrounding the Transactions is directly needed "for use in a proceeding in a foreign…tribunal" – namely, the Foreign Proceeding in the District Court of Tel Aviv, Israel.

### c. Applicant Is an "Interested Person" Within the Meaning of Section 1782

Applicant is an interested person within the meaning of Section 1782 because he is the plaintiff in the Foreign Proceeding in the District Court of Tel Aviv, Israel. *See Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782."); *see also John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132 (3d Cir. 1985) (a party to foreign litigation is an interested person under Section 1782). Accordingly, Applicant satisfies all three prongs under Section 1782.

## II. DISCRETIONARY CONSIDERATIONS WARRANT GRANTING THIS APPLICATION

In addition to the three prongs outlined above, the Courts consider the following factors when ruling on a Section 1782 request:

> (1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' in which case 'the need for § 1782(a) aid generally is not as apparent'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is 'unduly intrusive or burdensome.

*Mees v. Buiter*, 793 F.3d at 298, quoting *Intel*, 542 U.S. at 264-54. Each of these factors favors granting this Application before the Court.

The first factor weighs in favor of Applicant because UBS is not a participant in the Foreign Proceeding. UBS will not be brought before the court hearing the Foreign Proceeding because it is not a party to the Foreign Proceeding and the Tel Aviv District Court does not appear to have jurisdiction over UBS. *See Intel*, 542 U.S. at 264 ("nonparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid").

Second, it is unlikely that the District Court in the Foreign Proceeding would be unreceptive to this Court's granting of the discovery sought in this Application. Indeed, Israel is a party to the Hague Evidence Convention, suggesting that its courts are receptive to U.S. federal judicial assistance. *See In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, 2019 WL 168828, at *10 (D.N.J. Jan. 10, 2019) (explaining that "the receptivity of a foreign court to U.S. federal judicial assistance may be inferred from its assent to treaties that promote such cooperation"). Accordingly, there is no reason to believe that the Tel Aviv District Court would object to this Court's assistance with discovery.

Third, this Application does not conceal any attempt to circumvent any discovery policy of Israel or the United States. Courts have interpreted this third factor as an inquiry into the applicant's good faith: "[A] district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65. Here, Applicant's Application is made in good faith, and his Application is *not* for the purpose of bypassing any discovery law that is applicable in Israel or the United States. This is especially true, since Yogev was very vague, within his statement of defense, regarding the sale of his shares to the Applicant, and only stated, that "to the best of his knowledge, during the relevant dates specified within the statement of claim, his shares were not sold to a broker on behalf of UBS." (Avnieli Declaration ¶ 6.) In addition, Yogev admitted

9

that he sold 298,520 Shares on 22 December 2021 to Israeli financial institutions. (*Id*. at ¶ 7.) However, in the documents which Yogev provided in support of that claim, there is no mention of the purchaser(s). (*Id*.)

Finally, this Application is not unduly intrusive or burdensome. Applicant is asking for an extremely limited set of documents and information about four specifically identified transactions. This routine counterparty information and documentation is basic and UBS – a sophisticated international financial institution – should easily be able to produce it. Further, UBS Israel directed Applicant to seek this information from its American affiliate and this Section 1782 Application is the process necessary to issue subpoenas to UBS. As such, the burden on UBS is incredibly low. Therefore, each of the discretionary factors discussed above weigh in favor of granting this Application.

### III.   THIS APPLICATION IS MADE ON NOTICE TO UBS

While District Courts in this Circuit typically handle Section 1782 requests on an *ex parte* basis, the Applicant provided notice of this Application to UBS.[2] *See Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("…it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*").

---

[2] Immediately following the filing of the Application, Applicant will provide notice to UBS by sending an as-filed copy of the Application to UBS's counsel that responded to Regelmann's inquiries – Dan Rosenbaum – through email (dan.rosenbaum@ubs.com) and by serving physical copies of the Application by service through the New York Secretary of State.

## **CONCLUSION**

Based on the foregoing, Applicant respectfully requests that this Court grant the instant Application in its entirety.

Dated: November 21, 2024

                                              Respectfully submitted,

                                              **TANNENBAUM HELPERN**
                                              **SYRACUSE & HIRSCHTRITT LLP**

                                              By: */s/ Daniel J. Horwitz*
                                                   Daniel J. Horwitz
                                                   Carl F. Regelmann

                                              900 Third Avenue
                                              New York, New York 10022
                                              (212) 508-6700

                                              *Attorneys for Applicant*